### In re WAYNESBORO DRUG CO.

(District Court, S. D. Georgia, N. E. D. September 26, 1907.)

1. BANKRUPTCY—COMPOSITION—GROUNDS FOR REFUSAL TO CONFIRM.

The provision of Bankr. Act July 1, 1898, c. 541, § 12d, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], that the judge shall confirm a composition if satisfied "(1) that it is for the best interest of the creditors," requires the judge to determine that question independently of the decision of the majority of the creditors; but their decision is prima facie evidence that the composition is for their best interest, and the burden rests upon objecting creditors to show such gross discrepancy between the offer and the amount to be reasonably expected from a sale of the assets as to justify a refusal to confirm.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 591, 592.]

2. SAME.

The liabilities of a bankrupt corporation amounted to $17,079.84 and the claims filed to $10,092.64. The assets as scheduled were $10,753.29, which were appraised at $4,583.45. They consisted chiefly of the stock and fixtures of a drug store, and included a soda fountain and attachments and other property of considerable value held under contracts of conditional sale and only partially paid for. *Held,* that an offered composition of 30 per cent., accepted by a majority of the creditors in number and amount, should be confirmed.

In Bankruptcy. On objections of J. R. Wood & Sons to composition.

Pierce Bros., for objecting creditors.
Lawson & Scales, for bankrupt.

SPEER, District Judge. The Waynesboro Drug Company, as its name imports, is a corporation of Waynesboro, Ga. As also suggested by the corporate name, it was engaged in the sale of drugs and other medications. Its activities extended likewise to transactions in jewelry and other merchandise. Whether ascribable or not to its multifarious ventures, in the early days of A. D. 1907 the governing authorities of the corporation discovered that it was in financial stress and unable to meet its obligations. With commendable promptitude, on the 15th of January, the company addressed a circular letter to its creditors, conveying information of its condition, and perhaps, to remove any of those apprehensions which might result from the timidity of capital, offered to settle the debts by the execution of promissory notes to be made

payable in the fall. While tradition recounts that this expedient was often adopted by Richard Brinsley Sheridan, with great relief to himself and no increase of risk to the tradesmen of London, it was not accorded favor here. A petition in involuntary bankruptcy resulted, and on April 27th the corporation was adjudged bankrupt. A meeting of creditors was held, and a trustee elected. A few days later the corporation proposed a composition, by offering to pay its creditors 30 per cent. of their indebtedness. After proper notice, and the usual proceedings before the referee, a majority in number of the creditors, holding the larger share of the company's debts, agreed to accept the offer. On the date of the hearing required by the statute certain creditors objected to the composition, and filed their specification of such objections. This substantially is that the composition is not and will not be "for the best interest of creditors." Certain facts are set forth by the objectors to support their contention. All of these appear of record, and, counsel having agreed to submit the case upon briefs, the court has taken time for advisement.

There are no charges of fraudulent conduct on the part of the Waynesboro Drug Company. We may conclude, then, that bankruptcy was its misfortune, but not its fault. Now, in section 12, cl. "d," of the bankruptcy act (Act July 1, 1898, 30 Stat. 550, c. 541 [U. S. Comp. St. 1901, p. 3427]), it is provided as follows:

"The judge shall confirm a composition, if satisfied that (1) it is for the best interests of the creditors. * * *"

While it seems to be the rule in England that the decision of the majority of creditors on the question of "interest" is final, unless fraud is disclosed (Collier on Bankruptcy [6th Ed.] 167), the provision just quoted requires that here the judge must be satisfied that the offer is for the best interests of creditors. It is his duty, then, to investigate the facts, independently of any agreement or conclusion they may have made. While this is true, the fact that a majority of the creditors have consented to the composition is prima facie evidence that it is for the best interest of all, yet any gross discrepancy between the offer and the amount to be reasonably expected from the sale of the assets will justify a refusal to confirm. In re Whipple, Fed. Cas. No. 17,513; In re Weber Furniture Co., Fed. Cas. Nos. 17,330, 17,331; In re Arrington Co. (D. C.) 8 Am. Bankr. Rep. 64, 113 Fed. 498; Collier on Bankruptcy, 167; Loveland on Bankruptcy, 717. These authorities make clear the duty of the court in conducting its investigation. Where, however, an objecting creditor demands as a matter of his right that the composition should be denied, he must by proper averments, and by evidence in support of the same, show sufficient grounds for such denial, and in such cases the burden is on him. City National Bank v. Doolittle, 107 Fed. 236, 46 C. C. A. 258. We will inquire, then, whether the court may discover, or whether the objecting creditors have shown, any such gross discrepancy between the offer of composition and the amount to be reasonably expected from a sale of the assets as will oblige a refusal of the composition.

The liabilities of the Waynesboro Drug Company are $17,079.84. While the assets of the company, as presented by the schedule, amount

to the nominal sum of $10,753.29, the appraisers by their report estimate them as worth only $4,583.45. The correctness of the appraisement is not challenged, and may therefore be properly adopted by the court as correct. The claims against the assets are 74 in number, and amount to $10,092.64. To carry out its offer of 30 per cent. of this sum, the bankrupt has deposited in cash $3,692.40. From the appraised value, however, certain deductions must be made. These are for articles of personalty sold to the bankrupt with reservation of title in the vendors. In these the trustee would seem to have only an equity, equivalent to the amount of partial payments made on the purchase price. Creditors of this class have expressed their intention to reclaim the property thus conditionally sold. To illustrate the significance of these claims, we may contemplate the soda water "fountain." To this indispensable accessory to the prosperity of a corporation dispensing drugs and medications in this latitude, the bankrupt company possessed, and the trustee possesses, a conditional title only. The value of the "fountain" is $2,175. The fixtures, which make gush its refreshing streams, are worth $790. Deducting the value of these and other articles, to which the trustee has only the conditional title of the bankrupt from the appraised value of the assets, even when we make allowance for the equities resulting from partial payments, it is by no means clear that the balance remaining in the hands of the trustee, or due to him, will amount to more than the sum deposited in support of the composition. When, in addition to this, we consider the large depreciation—often below the estimates of the appraisers—in broken stocks of merchandise of this general character, and the uncertain values of the open accounts on the books of the company, the benefits which might result to creditors by a disapproval of the composition are gravely problematical. Indeed, a close analysis of the figures involved will demonstrate that the stock must bring 60 per cent. of its inventoried value, and the notes and accounts 33⅓ per cent. of their face value, in order to secure the creditors any appreciable advantage over that offered by the composition. Under all the circumstances, the court is not satisfied that these results could be obtained. Besides, due allowance should be made for the costs of administration, if the matter should proceed as usual in bankruptcy. This might materially deplete the sum to be apportioned among the creditors.

When we further consider that the composition will accomplish the ever-meritorious result of avoiding the law's delay, will end the litigation, will discharge the bankrupt company—which has been guilty of no fraud—from its indebtedness, will permit its officials to engage in perhaps more profitable pursuits, and will enable the creditors to recover each an equal and not insignificant share of the sum due them by their unfortunate, but honest, debtor, we must conclude that its approval is for the best interests of the creditors, and will also contribute in a wholesome way to the moral and financial status of creditor and debtor alike. Indeed, we believe that for just such cases as this were compositions authorized by the law.